FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 10, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SEAN D.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>Defendant. | NO. 1:26-CV-3052-TOR<br><br>ORDER DENYING PLAINTIFF'S OPENING BRIEF; GRANTING DEFENDANT'S RESPONSE BRIEF |

BEFORE THE COURT are Plaintiff's Opening Brief (ECF No. 7) and Defendant's Response Brief (ECF No. 11). These matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Plaintiff's Opening Brief (ECF No. 7) is **DENIED** and Defendant's Response Brief (ECF No. 11) is **GRANTED**. The Commissioner's denial of Plaintiff's application for benefits under Title II of the Social Security Act is **AFFIRMED**.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158–59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104,

1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409–410 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)(v). At step one, if the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b). If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.

At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On November 6, 2020, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of December 31, 2014. Tr. 244–250. The application was denied initially on October 19, 2021, and again on reconsideration on February 11, 2022. Tr. 122, 141, 147–151, 153–158. This case has been to the District Court and remanded twice by stipulation of the parties. Tr. 717–718, 1067–1068. During a prior hearing before ALJ Cecelia Lacara on May 6, 2024, Plaintiff amended his alleged onset date to the date last insured of June 30, 2017. Tr. 596, 658–659. Plaintiff appeared at a telephonic hearing before ALJ Mark Triplett on December 15, 2025. Tr. 1074–1105. ALJ Triplett issued an Unfavorable Decision on January 16, 2026. Tr. 1039–1062. Plaintiff filed a timely appeal to this Court.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff had not engaged in substantial gainful during the period from his alleged onset date of June 30, 2017, through his date last insured of June 30, 2017. Tr. 1045. At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease; depression; post-traumatic stress disorder ("PTSD"); and obstructive sleep

apnea. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 1046. The ALJ then found Plaintiff had a residual functional capacity to perform light work with the following limitations:

> [H]e could frequently climb ramps and stairs. He could occasionally climb ladders, ropes, and scaffolds. He could frequently balance, stoop, kneel, crouch, and crawl. He could tolerate occasional exposure to workplace hazards such as working in high, exposed place[s] or in proximity to moving mechanical parts. He could understand, remember, and carry out simple instructions. He could tolerate occasional interactions with coworkers but could not engage in tasks requiring teamwork of close collaboration with coworkers. He could tolerate occasional interaction with supervisors. He required regular work breaks at 2-hour intervals.

Tr. 1047.

At step four, the ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work. Tr. 1052. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, residual functional capacity, and testimony from a vocation expert,-there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as assembler, small products; routing clerk; and housekeeping, cleaner. Tr. 1053–1054. The ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from June 30, 2017, the alleged onset date, through June 30, 2017, the date last insured. Tr. 1054.

## ISSUES

Plaintiff seeks judicial review of the ALJ's final decision denying him disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues:

1. Whether the ALJ properly weighed the medical opinion evidence; and
2. Whether the ALJ properly considered Plaintiff's subjective symptom testimony.

ECF No. 7 at 2, 4–21.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff argues the ALJ erred by failing to properly evaluate the medical opinion evidence of Dr. Jeffrey Hansen, testifying medical expert; Drs. Yvette Modad and Dave Atteberry, treating physicians; Dr. J. Neer, treating psychologist; and Drs. Yondell Moore, Sheri Tomak, Craig Billinghurst, M.D., and Alvin Smith, Disability Determination Services ("DDS") evaluators. ECF No. 7 at 2, 4–17.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. 20 C.F.R. § 404.1520c; *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844–01 (Jan. 18, 2017).

Under the new regulations, the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s)." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844–01, 5867–68. Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c. The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5).

The ALJ is required to explain how the most important factors, supportability and consistency, were considered. 20 C.F.R. § 404.1520c(b)(2). These factors are defined as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

> persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)–(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(2). However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered. 20 C.F.R. § 404.1520c(b)(3).

1. *Jeffrey Hansen, MD, Testifying Medical Expert*

Dr. Hansen, medical expert, testified at Plaintiff's administrative hearing on December 15, 2025. Tr. 1074–1105. Dr. Hansen noted that Plaintiff had a history of lumbar and thoracic degenerative disc disease. Tr. 1088–1090. He testified that degenerative disc disease is progressive in nature and stated that he believed Plaintiff had degenerative disc disease in the lower thoracic region in 2017 that would have caused pain. Tr. 1088–1090, 1092. He testified that he believed Plaintiff would have been limited to a sedentary or light exertional level during the period at issue. Tr. 1090. He also opined that Plaintiff would have had good days and bad days and

would have to miss three to four days of work per month, "or at least parts of days because of the need to actually lie down and rest and relieve his pain." Tr. 1090.

The ALJ found Dr. Hansen's opinion to be unpersuasive. Tr. 1051. Specifically, the ALJ concluded that Dr. Hansen's opinion was overly speculative, not supported by contemporaneous records, and inconsistent with evidence well after the period at issue. *Id.*

As to supportability, the ALJ reasoned that Dr. Hansen did not review any imaging from the time period in question. Tr. 1051. Instead, the ALJ noted that Dr. Hansen cited to records and imaging results from many years after the period at issue to note a history of lumbar and thoracic degenerative disc disease, and he did not provide any support for relating limitations back to 2017, other than vague speculation. *Id.* The ALJ found that although Dr. Hansen testified Plaintiff would have had good days and bad days, he admitted there was no physical examination around the time of the alleged onset date to rate Plaintiff's level of functioning. *Id.* The ALJ also determined that Dr. Hansen provided no basis for how he arrived at his finding that Plaintiff would miss three to four days of work per month. *Id.*

As to consistency, the ALJ found that Dr. Hansen focused largely on the progressive nature of degenerative disc disease, but the degree of impairment he opined was inconsistent with Plaintiff's relatively normal physical examinations from years after the date last insured. Tr. 1051. The ALJ stated that the physical

examinations showed Plaintiff had normal range of motion in his back and extremities and he walked with a normal gait. Tr. 1050–1051; *see, e.g.*, Tr. 895–896 (January 2023: Plaintiff complained of uncontrolled pain, but upon evaluation he had full range of motion in his back and upper and lower extremities with no tenderness); Tr. 894 (May 2023: Plaintiff reported that he enjoyed going fishing and, upon evaluation, had full range of motion in his back and extremities, and walked with a normal gait.)

Plaintiff takes issue with the ALJ's finding that Dr. Hansen did not review any imaging from the time period at issue, and argues that this is unsustainable reasoning because there was no spinal imaging from 2017 to review. ECF No. 7 at 6; citing Tr. 1051. Plaintiff asserts that Dr. Hansen's opinion was based on his review of the imaging in 2022 and 2023, the historical analyses by the Veterans Administration ("VA"), the nature of degenerative disc disease progression, the consistent treating provider opinions, and treatment history of heavy medications. ECF No. 7 at 7; citing Tr. 1087–1091.

The Court finds that the ALJ did not err in his consideration of the supportability of Dr. Hansen's opinion. The imaging that Dr. Hansen reviewed was from many years after the relevant period and he provided no support for relating limitations back to 2017 other than vague speculation that because degenerative disc

("DDD") disease is gradual, Plaintiff had DDD in the lower thoracic region in 2017. *See* ECF No. 11 at 7–8; citing Tr. 1087–1088, 1090, 1092.

Plaintiff also argues that the ALJ improperly discounted Dr. Hansen's opinion based on the "relatively normal" range-of-motion in his back/extremities and normal gait around the date last insured because Dr. Hansen did not rely on abnormal gait or range of motion to reach his conclusion. ECF No. 7 at 8; ECF No. 12 at 4; citing Tr. 1051. Moreover, Plaintiff asserts that the record did reflect abnormalities in gait and range of motion around the date last insured. ECF No. 7 at 8; citing Tr. 456 (August 2016: tenderness in the lumbar paraspinous muscles; flexion limited to about 45 degrees; notable hamstring tightness during hip flexion); Tr. 436 (March 2017: tenderness in the lumbar paraspinous muscles; flexion limited to about 45 degrees); Tr. 409 (June 2019: gait slightly antalgic and complaint of being unable to walk more than 50 feet before his back seized); Tr. 589 (August 2019: physical therapy noted "severe fixation" with subluxation of the L4 and sacral region segments; moderate restriction in function at L1 and T12 and C1, and moderate fixation affecting the pelvis).

It is not the Court's role to reweigh the evidence presented to the ALJ. "[I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). The

Court finds that in analyzing Dr. Hansen's opinion, the ALJ adequately provided supportability and consistency explanations supported by substantial evidence.

*2. Yvette Modad, MD, and Dave Atteberry, MD, Treating Physicians*

On January 18, 2024, Dr. Modad, Plaintiff's primary care provider, completed a medical report and opined that Plaintiff would need to lie down during the day for one to three hours as needed due to chronic back pain. Tr. 917–918. Dr. Modad opined that Plaintiff would have deteriorated with regular and continuous work, and would have missed four or more days of work per month due to pain flares. Tr. 918. On July 7, 2025, Dr. Atteberry, Plaintiff's treating neurosurgeon, reached similar findings, although he opined that Plaintiff had to lie down every three to four hours for about 45 minutes. Tr. 1413–1414. Both doctors opined that these limitations existed since at least December 31, 2024. Tr. 918, 1414.

The ALJ found the opinions of Dr. Modad and Dr. Atteberry to be unpersuasive. Tr. 1051. As to supportability, the ALJ noted that Dr. Modad did not begin seeing Plaintiff until 2021, and Dr. Atteberry did not begin seeing Plaintiff until 2020, but neither provided any support or explanation for the broad finding that their opined limitations go back to several years before they even treated Plaintiff. *Id.* Further, the ALJ found that while Dr. Modad cited to prior imaging, this imaging was conducted well after the date last insured and not within the adjudicative period.

*Id.*; *see* Tr. 1087 (2022: x-ray of the lumbar spine); Tr. 1092 (2023: MRI of the lumbar and thoracic spine).

As to consistency, the ALJ stated that the degree of limitations noted in these opinions is inconsistent with the records from several years after the date last insured which showed Plaintiff had full strength and range of motion and walked with a normal gait. Tr. 1051; citing Tr. 894–896, 904. The ALJ also determined that the degree of impairment that these doctors opined went back to December 2014, was inconsistent with the fact that Plaintiff engaged in substantial gainful activity after that date. Tr. 1051; citing Tr. 251 (Plaintiff amended his disability onset date to May 31, 2016, "due to that was the last time he made a substantial gainful activity.").

Plaintiff argues that medical evaluations made after a claimant's insured status has expired are still relevant to pre-expiration conditions, citing a Ninth Circuit opinion stating, "medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." ECF No. 7 at 10; ECF No. 12 at 6; citing *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). However, as noted above, the ALJ did not discount the opinions of these doctors solely because they were made after Plaintiff's date last insured. The ALJ also determined that neither doctor provided any support or explanation for the broad finding that their opined limitations go back to several years before they treated Plaintiff. Tr. 1051. The ALJ also reasoned that the degree of opined limitations was inconsistent with the records

from several years after the date last insured and inconsistent with the fact that Plaintiff engaged in substantial gainful activity after the opined limitations began. *Id*.

The Court finds that in analyzing the opinions of Dr. Modad and Dr. Atteberry, the ALJ adequately provided supportability and consistency explanations supported by substantial evidence.

*3. J. Neer, Psy.D, Treating Psychologist*

On February 16, 2015, Plaintiff's treating provider, Dr. Neer, completed a disability questionnaire about his PTSD. Tr. 529–548. Dr. Neer noted that Plaintiff had been diagnosed with PTSD and traumatic brain injury ("TBI"), and opined that his symptoms were less likely to be related to TBI and more likely due to his mental health symptoms. Tr. 547–548, 531. Dr. Neer concluded that Plaintiff might manage part-time work but "[t]hese issues appear to have a notable impact in his ability to work a full-time job due to anxiety when in public areas, irritability and low concentration and attention." Tr. 547–548.

The ALJ found Dr. Neer's opinion to be unpersuasive. Tr. 1052. As to supportability, the ALJ determined that Dr. Neer's opinion was not persuasive in part due to the fact that it was rendered prior to the period at issue and the opinion lacked specificity. *Id*. Indeed, medical opinions that predate the alleged onset of disability are of limited relevance. *Carmickle v. Comm. Soc. Sec. Admin.*, 533 F.3d

1155, 1165 (9th Cir. 2008); *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989). The ALJ also indicated that although Dr. Neer opined that Plaintiff had an occupational and social impairment with reduced reliability and productivity, he did not assess specific limitations. Tr. 1052; citing Tr. 531.

As to consistency, the ALJ found Dr. Neer's opinion to be persuasive to the extent he suggested Plaintiff had some limitations due to mental health impairments, as that was consistent with Plaintiff's subjective complaints. Tr. 1052. However, the ALJ determined that the records leading up to and just after the period at issue showed numerous no-shows for mental health appointments or failure to engage entirely, despite the fact that Plaintiff was able to attend appointments for other issues. *Id.* The ALJ concluded that this suggested Plaintiff's mental health impairments were not significantly limiting at the time. *Id.*; citing Tr. 481–482 (October 2015: Plaintiff reported doing "alright" and his main complaint was continued reduced sex drive that had become problematic in his relationship with his wife; treatment notes indicate Plaintiff was "a no show with his PCP" but had been in contact with therapist); Tr. 463–464 (March 2016: Plaintiff did not show for mental health appointment); Tr. 460 (July 2016: Plaintiff requested a mental health appointment to "get back on cytalapram [sic]" because of anger, "real high" irritability, inability to focus, and a "short fuse."). The ALJ also determined that medical records from the period of time after Dr. Neer's opinion show ongoing

symptoms but also demonstrate that Plaintiff retained the ability to work in low-stress jobs that do not require a lot of concentration. Tr. 1052.

Plaintiff contends that the ALJ reversibly erred by failing to perform a supportability analysis. ECF No. 7 at 12; citing Tr. 1052. Plaintiff also asserts that Dr. Neer's examination contained significant support for his opinion, as he reviewed Plaintiff's VA record, including his treatment records and diagnoses, and he conducted a 73-minute interview. ECF No. 7 at 12–13; citing Tr. 529–548. As outlined above, the ALJ did address the supportability factor when discussing Dr. Neer's opinion. Specifically, the ALJ determined that Dr. Neer's opinion was rendered prior to the period at issue and his opinion lacked specificity. Tr. 1052; *see* 20 C.F.R. § 404.1520c(c)(1)–(2).

Plaintiff also argues that in discounting Dr. Neer's opinion due to several missed mental health appointments leading up to the date last insured, the ALJ failed to properly consider reasons why Plaintiff might have had barriers to treatment, as required under SSR 16-3p. ECF No. 7 at 13; citing Tr. 1052. In support of his argument, Plaintiff cites a notation in Dr. Neer's evaluation stating that Plaintiff had a tendency to stay home and avoid public places as a component of his disorder, and he cites other records from 2015 indicating that Plaintiff only left the house once every few weeks to volunteer at a barbershop. ECF No. 7 at 13–14; citing Tr. 489, 545–546. Plaintiff asserts that records show he expressed fear and hesitancy in

starting trauma-focused therapy, which was recognized as avoidance. ECF No. 7 at 14; citing Tr. 480, 489. Plaintiff references statements showing he is triggered when driving if he might have to go under an overpass. ECF No. 7 at 14; citing Tr. 662. He also states that he was on a combination of multiple pain medications, which were noted to cause wooziness and groggy side effects, and combined with his sleep issues and nightmares this could further limit activities outside of the house or his ability to drive. ECF No. 7 at 15; citing Tr. 435, 456, 513.

Contrary to Plaintiff's assertion, the ALJ did consider barriers to treatment. Tr. 1049. Specifically, the ALJ noted that records throughout the remainder of 2016 and into early 2017 were largely unremarkable, showing that Plaintiff sought treatment for upper respiratory infection symptoms and underwent a routine vasectomy, but there were no significant complaints of mental health impairments or durational physical problems. *Id.*; citing Tr. 441–452. The ALJ cited treatment notes from March 2018, which showed that Plaintiff had missed multiple appointments, stating that he had "been busy with kids at home" and was "[d]oing well" with "no current complaints[.]" Tr. 1049; citing Tr. 435. The ALJ found that while Plaintiff's representative argued during the hearing that his lack of treatment was in part due to isolation because of his impairments, the records from around this time show Plaintiff was able to seek treatment for acute issues such as dental problems, upper respiratory symptoms, a chest rash, and pain following his

vasectomy. Tr. 1049. The ALJ determined that Plaintiff's ability to seek care for these issues undermines the argument that his impairments precluded him from seeking care for his mental health and back impairments. *Id.*

The Court finds that in analyzing the opinion of Dr. Neer, the ALJ adequately provided supportability and consistency explanations supported by substantial evidence.

*4. DDS Evaluators*

On April 22, 2021 and February 10, 2022, Yondell Moore, M.D. and Craig Billinghurst, M.D., DDS physical evaluators, determined that Plaintiff could perform a light range of work with frequent postural activities. Tr. 106–121, 123–140. On October 18, 2021 and February 10, 2022, Sheri L. Tomak, Psy.D. and Alvin Smith, Ph.D., DDS psychological evaluators, both determined that Plaintiff could engage in unskilled, repetitive, routine tasks in two-hour increments, have superficial incidental contact with the public, work in proximity to but not in coordination with co-workers, and have occasional contact with supervisors. *Id.*

The ALJ found the opinions of the DDS evaluators to be persuasive. Tr. 1050. As to supportability, the ALJ found these opinions were supported by the review of medical records available at the time the findings were made. Tr. 1050–1051. Specifically, the ALJ determined these opinions were supported by the "largely unremarkable" mental status evaluations around the time of the period at issue and

the records showing a history of complaints of back pain both before and after the period at issue. *Id.*

The ALJ determined that although the DDS psychological evaluators limited Plaintiff to superficial and incidental contact with the public, this portion of the opinion was not persuasive as the records shortly before and after the alleged onset date did not contain any support for this limitation. Tr. 1051.

As to consistency, the ALJ noted that the opinions of the DDS evaluators accommodated for Plaintiff's subjective complaints in the records around the relevant time, indicating some concentration and social problems but not to the extent that Plaintiff felt it necessary to engage in regular mental health treatment. Tr. 1051. The ALJ noted that Plaintiff's lack of engagement in mental health treatment, despite his ability to seek care for various acute concerns, was inconsistent with the degree of impairment alleged. *Id.*

The ALJ also determined these opinions were consistent with the physical examinations in the record, indicating some tenderness to palpation in Plaintiff's lumbar spine, but also showing that Plaintiff was generally observed to be in no distress and to walk with a normal gait. Tr. 1050. The ALJ found these opinions were also consistent with Plaintiff's lack of engagement in treatment, including records showing he declined physical therapy. *Id.*

Plaintiff argues that the ALJ erred by failing to articulate how these opinions were considered supported. ECF No. 12 at 8–9. He contends that the ALJ used the word “supported” but did not address what evidence the doctors specifically relied upon or why their explanations were persuasive. ECF No. 7 at 16; citing Tr. 1050–51. Plaintiff also argues that the ALJ’s consistency analysis is flawed. ECF No. 7 at 16. Specifically, he contends that the ALJ failed to note that the DDS physical evaluators reached conclusions contrary to Plaintiff’s treating sources and the testifying medical expert who had greater knowledge of the record through recent years. ECF No. 7 at 16; citing Tr. 1050–51. He also asserts that the consistency analysis was flawed because the ALJ made several errors in assessing the record as a whole, such as finding inadequate objective physical findings around the relevant period and a lack of mental health treatment. ECF No. 7 at 16.

Defendant responds that Drs. Moore, Billinghurst, Tomak, and Smith supported their opinions by their review of the record. ECF No. 11 at 11; citing Tr. 1050–1051. Specifically, Defendant notes that these doctors listed the evidence they reviewed before providing their opinions. ECF No. 11 at 11; citing Tr. 108–109, 125–126. Defendant asserts that the ALJ reasonably found these doctors’ opinions were inconsistent with Plaintiff’s lack of treatment around the relevant period and the Court must uphold the ALJ’s decision to discredit a medical opinion based on the consistency factor if the decision was simply supported by substantial evidence.

ECF No. 11 at 12; citing *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The Court agrees.

The Court finds that in analyzing the opinions of the DDS evaluators, the ALJ adequately provided supportability and consistency explanations supported by substantial evidence.

**B. Plaintiff's Symptom Testimony**

Plaintiff contends the ALJ erred in rejecting his subjective symptom testimony. ECF No. 7 at 17–21. An ALJ engages in a two-step analysis to determine whether a claimant's subjective symptom testimony can be reasonably accepted as consistent with the objective medical and other evidence in the claimant's record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2. When evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the following factors should be considered: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other

than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id*. at *7–8; 20 C.F.R. § 404.1529(c).

Here, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 1048.

**1. Objective Medical Evidence**

The ALJ concluded that the objective medical evidence did not support Plaintiff's allegations and resulting functional limitations to the degree that he alleged. Tr. 1049. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346–47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

The ALJ determined that records after the period at issue do not provide any objective basis to support a finding of greater limitations during the relevant time frame than those noted in the residual functional capacity. Tr. 1049–1050; *see, e.g.*, Tr. 419 (July 2018: Plaintiff endorsed worsening back pain that he attributed to a flare; he also endorsed increased stress recently and while he reported that he recognized the connection between stress and pain flares, he stated he was not interested in seeing mental health at that time); Tr. 410 (June 2019: Plaintiff reported that his back pain was "relatively stable" on his current medication and noted that heat packs were very helpful; while he endorsed some increased mental health symptoms, this was noted to be a flare due to the recent death of his father); Tr. 370-371 (October 2020: Plaintiff was seen in a primary care clinic to request disability paperwork be filled out on his behalf and at that time, his prior mental health provider was contacted who noted that she had not treated him since around 2016, declined to fill out disability paperwork, and suggested he make an appointment to be evaluated if he was interested in reengaging in mental health treatment); Tr. 895–896 (January 2023: Plaintiff complained of uncontrolled pain but upon evaluation had full range of motion in his back and upper and lower extremities with no tenderness); Tr. 894 (May 2023: Plaintiff reported he enjoyed going fishing and upon evaluation had full range of motion in his back and extremities and walked with a normal gait).

The ALJ also found that records from well after the period at issue show no significant impairment during mental status evaluations and largely unremarkable physical examination findings. Tr. 1050. The ALJ concluded that the "extremely minimal records around the time of the period at issue fail to support the need for greater limitations than those already provided in the residual functional capacity[.]" *Id.*

Plaintiff asserts that the ALJ's reasoning cannot be sustained, as both his primary providers and the specialists who treated him or reviewed the complete record assessed disabling limitations. ECF No. 7 at 20–21; citing Tr. 477, 480, 485, 489, 514, 523, 528, 572, 575 (Plaintiff has presented as anxious); Tr. 544 (struggling to articulate thoughts); Tr. 575 (dysthymic); Tr. 507, 525, 528, 582–83 (with speech abnormalities); Tr. 525, 544 (with flat or blunted affect); Tr. 537 (with limited insight or judgment); Tr. 518 (with a MoCA score of 25/30); Tr. 482, 487, 494, 507, 525 (with memory impairment); Tr. 1671 (other abnormalities on neuropsychological testing); Tr. 418, 436, 456 (tenderness); Tr. 436, 456 (limited lumbar flexion ROM); Tr. 456 (hamstring tightness during hip flexion).

Plaintiff argues for a different interpretation of the evidence. ECF No. 7 at 20. However, the ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court finds that the ALJ did not err in his determination that the

objective medical evidence does not support Plaintiff's allegations of disabling mental and physical impairments during the period at issue. Tr. 1047–1050.

**2. Minimal Treatment**

The ALJ discounted Plaintiff's symptom testimony in part because Plaintiff received minimal or conservative treatment for his mental health and physical symptoms, and the available records from the time period shortly before and shortly after the period at issue showed improvement with minimal treatment. Tr. 1049–1050.

In assessing a claimant's credibility, an ALJ properly relies upon "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273 at 1284 (9th Cir. 1996)); *Fair*, 885 F.2d at 603. "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p.

Evidence of "conservative treatment" is also sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481

F.3d 742, 751 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (conservative treatment suggests a lower level of both pain and functional limitation). Further, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citing 20 C.F.R. § 404.1520a(c)(1)).

The ALJ found that records throughout the remainder of 2016 and into early 2017 were largely unremarkable and showed that Plaintiff sought treatment for upper respiratory infection symptoms and underwent a routine vasectomy, but there were no significant complaints of mental health impairment or durational physical problems. Tr. 1049. The ALJ also determined that Plaintiff did not show up for numerous mental health appointments and repeatedly declined referrals to physical therapy, suggesting that his impairments were not as limiting at that time as he now alleges given his ability to seek care for numerous other acute complaints. Tr. 1050; *see, e.g.*, Tr. 435–436 (March 2017: treatment notes indicate Plaintiff had been a no-show for multiple appointments, and stated he had "been busy with kids at home" and was "doing well" with "no current complaints"; Plaintiff endorsed a history of back pain, but stated he wanted to stop his medication due to fatigue; he had previously failed to follow through with a physical therapy referral and declined an additional referral as he stated that he was "too busy at home"; it was again noted

that he was discharged from mental health services due to frequent no-shows but reported some interest in re-engaging).

Plaintiff argues that the ALJ did not consider barriers to treatment, including limitations in going out at all, and that avoidance for trauma treatment is a significant feature of his disorder and not a sustainable reason to discount allegations. ECF No. 7 at 20. However, the ALJ specifically recognized that although Plaintiff's representative argued during the hearing that his lack of treatment was in part due to isolation because of his impairments, the records from around that time showed Plaintiff was able to seek treatment for acute issues such as dental problems, upper respiratory symptoms, a chest rash, and pain following his vasectomy. Tr. 1049. The ALJ reasonably determined that Plaintiff's ability to seek care for these issues undermined the argument that his impairments precluded him from seeking care for his mental health and back impairments. *Id.*

The ALJ also noted that Plaintiff received minimal treatment for his physical impairments. Tr. 1050. Specifically, the ALJ determined that records from well after the date last insured showed that while Plaintiff endorsed ongoing back pain, he managed it primarily with medication and other conservative care. *Id.*

The Court finds that the ALJ did not err by relying in part upon Plaintiff's minimal mental health treatment and conservative physical health treatment to

discount his symptom claims. This was additional clear and convincing rationale, supported by substantial evidence, to discount Plaintiff's symptom claims.

Overall, the Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. Therefore, the Court does not find that the ALJ erred in his findings related to Plaintiff's subjective complaints.

Having reviewed the record and the ALJ's findings, the Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Opening Brief (ECF No. 7) is **DENIED**.

2. Defendant's Response Brief (ECF No. 11) is **GRANTED**.

The District Court Executive is directed to enter this Order, enter judgment for Defendant, provide copies to counsel, and **CLOSE** this file.

DATED November 10, 2026.

THOMAS O. RICE
United States District Judge